JOHN MONTFORT, APPELLANT, *v.* ISABEL MONTFORT, AS EXECUTRIX, ETC., RESPONDENT.

*Tenant for life — when required to give security for fund received — when testamentary trustee required to give security — 1871, chap. 482.*

A testator by his will bequeathed one-half of a certain sum of money to his "son John, in trust to be invested for the benefit of his heirs, he having the use or interest of the same; also his widow, so long as she remains his widow; he dying without heirs of his own begotten," the principal of the same shall revert to certain persons named in the will.

*Held,* that the bequest was a general one to John for life (and to his widow so long as she should remain his widow), with remainder over as specified in the will.

That as no trustee for the fund was created by the will, the executrix should either retain and invest the same, or that security should be required of John in case it were delivered to him.

That even if John, who was a non-resident of the State, was to be deemed a testamentary trustee of the fund, the surrogate was authorized, by section 1 of chapter 482 of 1871, to require him to give security for its ultimate disposition in accordance with the direction of the will.

APPEAL from a decree of the surrogate of Tompkins county, made upon the return of an order requiring the respondent to render an account of her proceedings as executrix, and to show ause why a certain legacy should not be paid to the appellant.

*J. L. Baker,* for the appellant.

*Merritt King,* for the respondent.

PER CURIAM:

The executrix named in the will had in her hands for distribution, according to the provisions of that instrument, $7,840.26, one-half of which sum, as is conceded, belonged to her absolutely, the other half was bequeathed as follows: "To my son John, in trust to be invested for the benefit of his heirs, he having the use or interest of the same; also his widow so long as she remains his widow; he dying without heirs of his own begotten, the principal of the same shall revert to the heirs of my brothers, John Monfort, Naomi, James

and Henry." This provision of the will is awkwardly expressed, but its meaning is manifestly this: That John should have the use and income of the fund during life; then that his widow should have such use so long as she should remain his widow, remainder over to those declared by the will entitled thereto. This construction of the will is not questioned; but John further claims and insists that by this provision he is made the *trustee of the fund,* and, hence, is entitled to have it paid over by the executrix to him for investment. The surrogate held otherwise, to wit: That a duty devolved upon the executrix to protect and preserve the fund for those entitled to it in remainder, and it was decreed that the executrix should retain and invest the fund for the benefit of all concerned until John should give security for its safe keeping for those entitled to it in remainder, in which event it might be paid over to him.

This decision was put on the ground that the executrix having the fund in hand owed the duty of its preservation to those entitled to it in remainder, and that John (being a non-resident of the State and for other reasons) was an improper person to receive the fund without giving security for its ultimate disposition in accordance with the provisions of the will.

A testator may confide a fund to a legatee for life, trusting to such legatee to preserve the fund for the benefit of those entitled to it in remainder, and in such case the legatee for life becomes the trustee of the fund during the continuance of the life estate. It is so decided in *Smith* v. *Van Ostrand* (64 N. Y., 278), but it may be doubted whether it was, in this case, intended that John should be intrusted with the fund. The language of the will, construed in the light of surrounding circumstances, does not, as we think, favor such construction. If the contrary construction be given, then, there being no express declaration as to the person who should make the investment, that duty would devolve upon the executrix, in whose hands the fund was placed by the testator. In this view the case in hand is like that supposed by Judge EARL, in *Livingston* v. *Murray* (68 N. Y., 485), where a bequest of a general residuary estate is made to A. for life, with remainder to B. after A.'s death, in a will in which executors are appointed. "In such case" (says the learned judge) "there is no

other trust than the law creates and vests in the executors. They take the legal title to all the personal property. They must convert it into money, pay the debts, expenses and specific legacies, if any, and as they are bound to execute all the provisions of the will, they are charged with a duty as to both A. and B. They must give to A. what belongs to him, and then to B. what belongs to him. They cannot discharge their duty by delivering the whole property to A. and thus imperil the rights of B." The learned judge adopts as sound law the rule laid down in Willard on Executors, that "when there is a general bequest to one for life and remainder over, the executor should convert the whole into money and invest it in permanent securities. The interest only is payable to the tenant for life, and on his death the residue belongs to the remainder-man." Judge RAPALLO lays down the same rule in *Smith* v. *Van Ostrand* (*supra*), on pp. 281 and 282; as does also Judge COMSTOCK in *Tyson* v. *Blake* (22 N. Y., 563). We are inclined to the opinion that the bequest in this case was general to John for life (and to his widow so long as she should remain his widow), remainder over as specified in the will. In that case the executrix was charged with a duty to all the beneficiaries of the fund, which would require either its retention and investment by her as executrix, or that security be given for its ultimate proper disposition in case of its delivery or payment over to John.

Again, in case John is to be deemed the testamentary trustee of the fund in the hands of the executrix, it was competent for the surrogate to require security for its ultimate disposition according to the provisions of the will before it should be delivered up or paid over to him. This authority is expressly given by chapter 482, section 1 of the Laws of 1871. Here was a fund in the hands of the executrix subject to the order of the surrogate as to its proper disposition, having in view the requirements of the will. The law cited declares that he may require testamentary trustees to give security in the same manner as provided in the case of executors, administrators or guardians. Before letters testamentary shall be granted to a non-resident of the State, he must give security for the faithful performance of the trust. John was a non-resident of the State, hence the surrogate was for this reason, not to speak of other reasons, authorized to require the security here provided for.

We are of the opinion, therefore, that the decree of the surrogate is right, and think it should be affirmed.

Decree affirmed, with costs against appellant.

LEARNED, P. J., and BOARDMAN, J., concurred.

Order affirmed, with costs against the appellant.